# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES of AMERICA** ) | |
| ) | **Criminal No.** |
| v. ) | **09-40013-FDS** |
| ) | |
| **EFRAIN MATIAS,** ) | |
| ) | |
| Defendant. ) | |
| ) | |
| **UNITED STATES of AMERICA** ) | |
| ) | **Criminal No.** |
| v. ) | **08-40020-FDS** |
| ) | |
| **EFRAIN MATIAS,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER ON
## MOTION TO RECONSIDER ORDER OF THE MAGISTRATE JUDGE
## ON MOTION FOR APPOINTMENT OF NEW COUNSEL

**SAYLOR, J.**

These two matters are prosecutions for drug trafficking. Defendant Efrain Matias has been represented by a total of five consecutive attorneys over the course of two separate cases. Matias himself retained the first two attorneys, but, after the second of those withdrew, each of the subsequent three have been appointed by the Court at public expense. Matias has had acrimonious relationships his lawyers, resulting in the repeated need for the court to appoint new counsel after the previous attorney has sought to withdraw due to breakdowns in communication and trust.

In the most recent iteration, Matias's current court-appointed attorney, Richard Welsh,

moved to withdraw and Matias himself moved for substitution of new counsel. After holding hearings on these motions, the Magistrate Judge granted Mr. Welsh leave to withdraw but declined to appoint new counsel. The basis for that decision was a finding that Matias had effectively waived his Sixth Amendment right to appointed counsel and implicitly asserted his right to self-representation by abusing his relationships with his attorneys and by employing dilatory tactics in court.

Matias timely moved for reconsideration of that order. The only relief he seeks, however, is new appointed counsel. He opposes his continued representation by Mr. Welsh, but he is affirmatively opposed to proceeding *pro se*. That raises the question whether the Court should order him to proceed with an attorney he has rejected or, instead, to proceed with no attorney at all.

On November 21, 2011, in open court, this Court reversed the order of the Magistrate Judge granting the motion of Mr. Welsh for leave to withdraw. The Court concluded that although the Magistrate Judge correctly found that Matias has no right to a fourth court-appointed attorney, he erred in finding that Matias must therefore proceed *pro se*. Matias will therefore remain represented by Mr. Welsh unless he exercises his right to self-representation or retains an attorney at his own expense. This memorandum is intended to set forth the reasons for the Court's decision in greater detail.

I.  **Background**

Efrain Matias was charged in two separate proceedings on charges arising out of cocaine trafficking and marijuana trafficking activities. After a jury trial, Matias was convicted on the

cocaine charges on February 7, 2011.[1] As to the marijuana charges, the counts were severed and trial proceeded against a co-defendant, Elia Roman, who was convicted on November 14, 2011.[2]

Initially, Matias retained private attorney Vincent Riccardi to represent him in both matters. On February 9, 2009, at a status conference before the Magistrate Judge, Matias indicated that he no longer wanted Mr. Riccardi to represent him and that he had retained new counsel, attorney Arthur Kelly. (02/09/2009 Status Report).

Mr. Kelly entered an appearance on behalf of Matias on February 11, 2009, and Mr. Riccardi was terminated as counsel the following day. For the next eight months, Mr. Kelly represented Matias. On November 14, 2009, Mr. Kelly filed a motion to withdraw on the ground that his relationship with Matias had "begun to deteriorate at a rapid pace." (Kelly Mot. to Withdraw). The motion was referred to the Magistrate Judge, who granted it on November 19, 2009.

By that point, Matias represented that he had no funds to retain private counsel. On December 3, 2009, the Magistrate Judge appointed attorney James Krasnoo as defense counsel under the Criminal Justice Act. However, on October 22, 2010, Matias filed a letter with the Court requesting appointment of new counsel. An *ex parte* hearing on held before the undersigned judge on November 1 to address that request. During the hearing, Mr. Krasnoo admitted that he was "not entirely sure what Mr. Matias' concern is specifically," but that Matias appeared to see him as "being more a prosecutor than a defense attorney in the information that

---

[1] Matias was sentenced on the cocaine charges on December 12, 2011.

[2] On January 27, 2012, after this Court reversed the order of the Magistrate Judge, Matias pleaded guilty on the eve of trial to three of the four counts in the marijuana case pursuant to a plea agreement under Fed. R. Cr. P. 11(c)(1)(C).

3

[Mr. Krasnoo had] given to him." (11/01/2010 Hr'g Tr., at 4). Mr. Krasnoo later suggested that "part of it has to do with Mr. Matias not having faith in me as an attorney who's capable of working for him." (*Id.* at 8). Matias, speaking for himself, expressed concern that Mr. Krasnoo was not defending his case with sufficient zeal. (*Id.* at 7-8) ("I feel like I'm in front of the battle instead of James Krasnoo . . . I don't see him doing anything."). The Court treated the request as a motion for new counsel, which it then denied. The Court observed:

> it's normally in the defendant's interest for an attorney . . . to poke at problems and . . . to explain to the defendant why there are issues or why the defendant's ideas may not work or where there are problems with the evidence from a defense perspective.
> . . .
> I'm much more concerned normally about the defendant whose counsel is . . . pretending that there are no problems and . . . effectively walking the defendant into a mine field.

(*Id.* at 9-10).

Mr. Krasnoo continued to represent Matias through the trial in the cocaine case. The defense was to a large extent based on a theory of entrapment. Matias testified at the trial; he acknowledged, among other things, that he was a marijuana dealer, but denied any cocaine trafficking. The jury returned a verdict of guilty in the cocaine case on February 7, 2011.

Shortly thereafter, on February 11, Mr. Krasnoo filed motions to withdraw as counsel in both the cocaine and the marijuana cases. (Krasnoo Mots. to Withdraw). In his motions, Mr. Krasnoo referred to a letter he had received from Matias, dated February 7, 2011, the same day as the verdict. (*Id.* ¶ 1). Mr. Krasnoo indicated that the contents of the letter suggested that he could "no longer occupy a position of trust in giving advice and counsel to the defendant." (*Id.*). He added that "[m]eaningful communication between the defendant and defense counsel has

4

broken down." (*Id.* ¶ 2). Finally, Mr. Krasnoo predicted "that any attempt to give advice to the defendant would be met with suspicion, distrust and disbelief." (*Id.* ¶ 3).

This Court held an *ex parte* hearing on Mr. Krasnoo's motion on February 16, 2011. At that hearing, Mr. Krasnoo explained that he believed himself unable to continue as counsel in either the sentencing proceeding for the cocaine case or the trial for the marijuana case because Matias "entertain[ed] a belief that [Mr. Krasnoo had] lied to him." (2/16/2011 Hr'g Tr., at 16). Mr. Krasnoo expressed his concern that Matias's belief would prevent him from effectively discharging his duties as defense counsel because "an attorney must be able to tell his client the truth, and if that is met with disbelief, suspicion or mistrust, there is no viable attorney-client relationship." (*Id.* at 17). This Court then referred the matter to the Magistrate Judge for determination.

On February 17, 2011, an *ex parte* hearing was held before the Magistrate Judge. At the hearing, Mr. Krasnoo maintained that he did not lie to his client during the course of his representation in the trial for the cocaine case. (2/17/2011 Hr'g Tr., at 8). Mr. Krasnoo explained that Matias's allegations of dishonesty followed disagreements they had about the legal consequences of Matias's decision to take the stand during the trial as well as about Mr. Krasnoo's defense strategy. (*Id.* at 5-9). Mr. Krasnoo also added that when he "presented to [Matias] things that [Mr. Krasnoo] thought were not likely to go the way [the defendant] wanted," the defendant accused him of being "a pessimist" who "sound[ed] like the prosecutor." (*Id.* at 6). The Magistrate Judge explained to Matias that replacing his attorney would likely delay a trial on the marijuana charges. (*Id.* at 11). He also added that "if you get a new lawyer you're probably still going to be getting advice that you don't necessarily want to hear." (*Id.* at

5

13). Matias confirmed that he desired a new attorney notwithstanding these considerations. (*Id.* at 13, 16). The Magistrate Judge took the issue under advisement and, on February 28, granted the motion, thereby terminating Mr. Krasnoo as defense counsel.

On March 1, 2011, the Magistrate Judge appointed a second counsel under the CJA, Edward Hayden. About two weeks later, however, Mr. Hayden filed a motion to withdraw. In his motion, filed March 16, Mr. Hayden explained that he met with his client on March 15, but, during the meeting, "communication broke down." (Hayden Mot. to Withdraw). Mr. Hayden added that "Mr. Matias expressed his interest in having counsel withdraw from the case." (*Id.*). On March 24, the Magistrate Judge held an *ex parte* hearing on the motion, which he then granted.

On April 5, 2011, the Magistrate Judge appointed attorney Richard Welsh. Mr. Welsh has served as Matias's counsel since that time. On August 23, 2011, Matias himself filed a motion requesting termination of Mr. Welsh and appointment of new counsel. (08/23/2011 Mot.). In the motion, Matias stated that their relationship suffered a "severe complete breakdown" and a "lack of communication." Matias requested a list of available attorneys and the opportunity to select an attorney of his choice from that list. (*Id.*). This Court denied the motion by electronic order on September 1, citing the defendant's difficulties with every attorney previously appointed to him and the fact that the interests of justice favored avoiding another round of expense and delay.[3] On September 13, Matias filed yet another motion, titled "Combined Notice of and Termination of Court-Appointed Counsel and Motion for

---

[3] Of course, each change of counsel resulted in substantial delays, as new counsel required a reasonable amount of time to review the evidence, meet with Matias, and otherwise learn the case.

Appointment of New Counsel." (09/13/2011 Motion). The matter was referred to the Magistrate Judge.

The Magistrate Judge held an *ex parte* hearing with Mr. Welsh and Matias on September 20, 2011. Mr. Welsh explained that, as he understood matters, the "only miscommunication" between him and his client had been "that if I don't say what he wants to hear then he considers that to be miscommunication." (09/20/2011 Hr'g Tr. at 9). Mr. Welsh added that he felt "very uneasy about going forward with the defense of" Matias because Matias had expressed his intention to appeal any adverse result on the basis of inadequate representation. (*Id.* at 11). Nevertheless, Mr. Welsh advised the Court that he would comply with any order regarding further representation of Matias. (*Id.* at 11). The Magistrate Judge then inquired of Matias about the basis of his desire for a new attorney. Matias indicated that he believed the legal advice he received from Mr. Welsh to be a deliberate misrepresentation of the law. The Magistrate Judge asked whether the basis of his complaints was "that Mr. Welsh gave you legal advice about an interpretation of a statute that you disagree with, that he deliberately misrepresented . . . that advice?" (*Id.* at 12). To this question, Matias replied affirmatively. (*Id.* at 12). When the Magistrate raised the possibility that he might proceed *pro se*, Matias emphasized "I'm not going to go *pro se* . . . I'm definitely not going to do that." (*Id.* at 13-14).

On September 27, the Magistrate Judge issued a memorandum and order denying defendant's motion for appointment of new counsel. The memorandum cited *United States v. Thomas*, 357 F.3d 357, 362 (3d Cir. 2004), for the principle that "a defendant who has exercised his right to be represented by counsel may, through his conduct, be deemed to have impliedly requested to proceed *pro se* and waive that right." It concluded that Matias, notwithstanding his

7

opposition to proceeding *pro se*, had engaged in behavior that could constitute a waiver by conduct of his Sixth Amendment right to counsel:

> This is the sixth time that Matias has requested that new counsel be appointed to represent him in [the cocaine case] and the fourth time in [the marijuana case]. On each occasion, I have held an *ex parte* hearing with Mr. Matias, [sic] and his counsel to explore whether there has been an irretrievable breakdown in the attorney-client relationship. All of these termination proceedings were characterized by the same conduct from Mr. Matias; he is unable to accept legal advice that does not include favorable information. Unfortunately, he is in a precarious legal situation and is having trouble accepting the realities of that situation. When he receives this bad news he lashes out at whoever his lawyer is at the time. Furthermore, it is clear from my colloquies with Mr. Matias and his attorneys, that his relationships with them have been characterized by his unrealistic demands of them, primarily as the result of his unrealistic expectations of their abilities to get charge concessions from the Government or exclude harmful evidence.
> . . .
> As a result of the potential implications to a defendant proceeding *pro se* in this Court, I have taken great pains to warn Mr. Matias that he will lose his right to counsel if he continutes [sic] to engage in the above referenced behavior and to advise him that any further misconduct will be treated as an implies [sic] request to proceed *pro se* and a waiver of his right to counsel appointed by the Court.

(09/27/2011 Order, at 4-5). The Magistrate Judge then clarified that these findings constituted a final warning to the defendant, stating that "[i]n other words, if Mr. Matias continues to make unreasonable demands on his attorney and/or is unable to get along with him, this Court is prepared to find that Mr. Matias, by his conduct, has waived his Sixth Amendment right to counsel." (*Id.* at 5). The opinion concluded with the denial of the motion for appointment of new counsel.

Shortly thereafter, on October 12, Mr. Welsh himself filed a motion to withdraw as defense counsel. In the motion, Mr. Welsh explained that he had met with Matias concerning the September 27 Order. During this meeting, Matias "indicated (a) that he does not wish to

8

proceed *pro se*; (b) that he does not wish to proceed *pro se*, with a standby attorney, (c) that he does not wish to be represented by [Mr. Welsh] . . . (f) that he does not believe anything that counsel says; (g) that he doesn't want anything to do with 'bull shit lawyers' who sell him out; . . . and (i) that he wants a trial on the merits, with newly appointed counsel." (10/12/2011 Mot. to Withdraw).

On October 14, the Magistrate Judge held a hearing on the new motion. At that hearing, Mr. Welsh explained that, during his meeting with Matias, he "indicated that he was sure I was cooperating with the prosecutor. He called me an effing liar. He disagreed with my advice. He called me retarded, stupid and a dead man, who doesn't have it in him any more. All of these things said, Matias has completely alienated me as his attorney, and I do not believe that I can in good faith continue to represent him." (Hr'g Tr. at 13). When questioned by the Magistrate Judge, Matias indicated his unwillingness to cooperate with his upcoming trial proceedings, saying "I'll stay with him [Mr. Welsh], and that's the beginning of a better reason to appeal the case when I'm done. . . . But let me tell you, I'm not going to come upstairs [to the courtroom]. You're going to have to do everything without me even being in court." (*Id.* at 16). Matias filed a letter the same day objecting to the Magistrate Judge's perceived disinclination to grant new counsel.

On October 18, the Magistrate Judge issued a finding and order on Mr. Welsh's motion. Referring to his earlier warning (in the September 27 Order) that further non-cooperation with Mr. Welsh would constitute a waiver of the right to counsel, the Magistrate Judge found "that Mr. Matias . . . has waived his Sixth Amendment Right to Counsel" through his conduct, namely "[h]is inability to communicate with his lawyers, his unrealistic demands of counsel, and his

9

combative and defensive nature." (10/18/2011 Order, at 2-3). The Magistrate Judge added that this conduct represented "calculated attempts to delay his sentencing and trial." (*Id.* at 3). He therefore concluded, "I am forced to grant Attorney Welsh's Motion to Withdraw and I will not reappoint new counsel." (*Id.* at 3).

At a conference before the undersigned judge on October 20, the Court stayed the Magistrate's October 18 order and granted Matias leave to seek reconsideration of it.[4] Matias reiterated that he was opposed both to proceeding *pro se* and to proceeding with Mr. Welsh as counsel, and that, if those were his only options, that he refused to choose between the two. The Court took the issue under advisement, and gave the prosecution an opportunity to file a responsive motion.

On November 21, 2011, this Court held a conference with the parties during which it reversed the order of the Magistrate Judge and reinstated Mr. Welsh as the defendant's counsel. This opinion follows.

## II. <u>Standard of Review</u>

When a district court refers a matter to a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A), the Magistrate Judge's decision on that matter may be reconsidered only if it is "clearly erroneous or contrary to law." *See Auto Europe, LLC v. Connecticut Indem. Co.*, 321 F.3d 60, 64 (1st Cir. 2003). Nonetheless, a district judge is "entitled to discount" a magistrate's conclusions where its opinion omits essential findings or analysis. *Quaker State Oil Refining Corp. v. Garrity Oil Co.*, Inc. 884 F.2d 1510, 1517 n.5 (1st Cir. 1989) (upholding district

---

[4] The Court nonetheless conducted a colloquy regarding the risks of proceeding *pro se*. *See Faretta v. California*, 422 U.S. 806 (1975).

10

court's reversal of magistrate's decision where the magistrate's order was "cryptic").

**III.     Analysis**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." Though "fundamental," *see Gideon v. Wainwright*, 372 U.S. 335, 343 (1963), the right does not guarantee an indigent defendant a particular attorney. *United States v. Allen*, 789 F.2d 90, 92 (1st Cir. 1986). A defendant who is dissatisfied with his appointed attorney therefore may not demand a different lawyer except for good cause. *Id.* Likewise, an defense attorney's unwarranted motion to withdraw may be denied without violation of any right of the defendant. *See, e.g.*, *United States v. Ahrendt*, 560 F.3d 69, 72 (1st Cir. 2009); *United States v. Poellnitz*, 301 Fed.Appx. 1, **1 (1st Cir. 2008).

A defendant may expressly waive the right to appointed counsel, as long as the waiver is made "knowingly and intentionally."[5] *United States v. Fazzini*, 871 F.2d 635, 642 (7th Cir. 1989). Such a waiver amounts to an election by the defendant to assert his right to represent himself *pro se,* which requires that the court inform the defendant of the risks of self-representation. *Faretta v. California*, 422 U.S. at 835. When a defendant chooses to represent himself or herself, the court may still appoint "standby counsel" to aid the defendant upon request, even over the defendant's objection. *Id.*, 422 U.S. at 834 n.46.

The right to appointed counsel may also be waived inadvertently if the defendant's

---

[5] The right to counsel may also be forfeited. Forfeiture, unlike waiver, "results in the loss of a right regardless of the defendant's knowledge thereof and irrespective whether the defendant intended to relinquish that right." *United States v. Goldberg*, 67 F.3d 1092, 1100 (3d Cir. 1995). Forfeiture has been applied, however, only where a defendant's conduct is particularly egregious, involving, for example, verbally threatening the attorney or attempting to persuade counsel to perjure himself. *United States v. McLeod*, 53 F.3d 322, 325 (11th Cir. 1995).

11

conduct effects an implied waiver. *Goldberg*, 67 F.3d at 1100. Nonetheless, because waiver must be knowingly made, waiver by conduct may not be found unless the defendant is first warned that his or her misconduct may result in a waiver of the right to counsel and may, as a consequence, leave the defendant no option but to proceed *pro se*. *United States v. Thomas*, 357 F.3d 357, 362 (3d Cir. 2004) ("If the district court has warned the defendant that he will lose his attorney if he engages in dilatory misconduct, 'any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel.'" (quoting *Goldberg*, 67 F.3d at 1100)); *Casiano v. United States*, 2009 WL 2254497, 9 (D.P.R. 2009) (citing *Thomas* and finding waiver by conduct). Behavior which may constitute a waiver by conduct includes a "persistent, unreasonable demand for dismissal of counsel and appointment of new counsel." *United States v. Green*, 388 F.3d 918, 922 (6th Cir. 2004) (finding waiver by conduct after the defendant accused each of three consecutive appointed attorneys of conspiring against him with the government and refused to allow himself to be represented by them).

It is therefore clear that when a defendant abuses his right to counsel, and thereby waives that right, a district court may, in its discretion, compel the defendant to proceed without an attorney. It does not follow, however, that the Court *must* follow that course in all such instances.[6] When such a defendant opposes self-representation, a *pro se* trial may not be in the

---

[6] In *Goldberg*, the court foresaw this circumstance, noting that:

> In many situations there will be defendants who engage in dilatory conduct but who vehemently object to being forced to proceed *pro se*. These defendants cannot truly be said to be "waiving" their Sixth Amendment rights because although they are voluntarily engaging in misconduct knowing what they stand to lose, they are not affirmatively requesting to proceed *pro se* . . . . Thus, instead of "waiver by conduct," this situation more appropriately might be termed "forfeiture with knowledge."

*Goldberg*, 67 F.3d at 1101. The court thus acknowledged that waiver of the right to counsel by conduct is distinct

12

interests of either the defendant or the Court. A defendant who is unfamiliar with the law will rarely (if ever) present as effective a defense as an experienced lawyer. Moreover, a defendant's lack of familiarity with court procedure and the rules of evidence will inevitably cause delays, wasting judicial resources. Thus, as a remedy for a defendant's intransigence, compelling him to proceed *pro se* may prove to be a cure that is worse than the disease.

Furthermore, a request for new counsel, without more, should not be interpreted as a request to proceed *pro se*. In *United States v. Allen*, a defendant who was dissatisfied with his attorney requested new appointed counsel. 789 F.2d at 91. After determining that good cause did not exist to substitute counsel, the trial court denied the motion. *Id.* at 92. After a trial in which he was represented by the original lawyer, the defendant was convicted. *Id.* at 91. On appeal, the defendant challenged the lower court's determination that no cause existed to substitute counsel, but the finding was affirmed. *Id.* at 93. As a second argument, the defendant contended that "the district court's failure to respond to his implicit request to proceed *pro se* violated his Sixth Amendment rights." *Id.* at 93. The court rejected this argument, pointing out that the defendant "made no indication of a desire to proceed without counsel." *Id.* at 94. It declined to recognize an implicit request to proceed *pro se*, holding that "[w]hile 'the right to counsel is in force until *waived*, the right of self-representation does not attach until *asserted*." *Id.* at 94 (quoting *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir. 1982) (en banc) (emphasis in original). *See also Moreno v. Estelle*, 717 F.2d 171, 175 (5th Cir. 1983) ("We cannot infer from the defendant's general request to the court to dismiss his attorney that he desired to waive

---

from an actual, affirmative assertion by the defendant of his right to self-representation, which the court would be bound to respect.

counsel and continue the trial *pro se*."). The court therefore held that the defendant "did not have a right to have a particular lawyer represent him . . . nor to demand a different appointed lawyer except for good cause." In an explanatory footnote, the court added: "Appellant's right was to effective counsel, not to counsel of his own choice at any cost in terms of delay . . . . This restraint is to ensure that the right is not manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." *Allen*, 789 F.2d at 92 n.4.

Here, defendant has engaged in conduct that has been found to effect a waiver of the right to counsel. He has not, however, said or done anything that might be said to amount to an affirmative assertion of the right to self-representation; to the contrary, he expressly opposes proceeding *pro se*. When it was explained that his only options were proceeding with current counsel or proceeding *pro se*, defendant refused to choose. As matters stand, defendant therefore has waived the right to counsel but has not asserted the right to self-representation.

The October 14 Order of the Magistrate Judge essentially contained two findings: a finding that defendant waived his right to appointed counsel through his conduct and a finding that defendant thereby implicitly requested to proceed *pro se*. With respect to the first finding, this Court agrees that defendant has no right to *new* counsel. Defendant's unhappiness with his lawyer's advice and legal conclusions are not good cause for the attorney's replacement. After repeated warnings that he would not receive yet another court-appointed attorney, defendant nevertheless persisted in resisting Mr. Welsh's efforts to represent him. His pattern of alienating his attorneys and then requesting a new attorney at public expense constitutes a dilatory tactic

sufficient to justify waiver by conduct of his Sixth Amendment right.[7]

With respect to the second finding, however, the Magistrate Judge assumed that his conclusion with respect to waiver necessarily compelled a finding that defendant asserted his right to proceed *pro se*. In other words, the Magistrate Judge erred in assuming that the only option was to compel defendant to proceed *pro se* when, in fact, there was another: requiring defendant to proceed with Mr. Welsh as counsel. The Magistrate Judge's failure to consider the option of requiring defendant to proceed with current counsel thus requires reconsideration by this Court.

Faced with two unwelcome alternatives—forcing defendant to proceed *pro se*, or forcing him to accept counsel—this Court will require that Mr. Welsh continue to represent the defendant. Although he has candidly expressed exasperation with defendant at times, Mr. Welsh has advised this Court that he is willing and able to represent defendant with the requisite degree of zeal. It is beyond dispute that the interests of defendant will be better protected if he proceeds with counsel than without. Of course, if defendant affirmatively elects to proceed *pro se*, he will be allowed to do so, after a proper waiver of the right to counsel. And if the circumstances change, the Court may elect to exercise its discretion differently, and permit Mr. Welsh to withdraw.[8] But because defendant refuses to choose for himself between the two options before him, the Court will opt for the choice that better preserves his interest in a fair trial and this Court's interest in a manageable proceeding.

---

[7] Defendant has challenged the adequacy of the warning that he received regarding waiver of his right to counsel. Because the Court holds that defendant should be required to proceed with current counsel rather than *pro se*, it is not necessary to reach that question.

[8] The Court notes that while defendant has been a difficult and often uncooperative client, he has not engaged in threatening behavior, nor has he put his attorney's safety or security at risk.

That choice, of course, is by no means a perfect solution. Among other things, it puts counsel for the defendant in a difficult position, and potentially increases his exposure to a later claim by defendant that his counsel was constitutionally ineffective. But the Court has to make the best choice it can under the circumstances. Defendant himself was the architect of this situation, and he must necessarily bear substantial responsibility for his own actions.

**IV.    Conclusion**

For the foregoing reasons, on reconsideration of the October 18, 2011 Finding and Order of the Magistrate Judge, the motion of Defendant for new counsel is DENIED and the motion of Mr. Welsh to withdraw as defense counsel is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  February 2, 2012